IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| HARRIS INVESTMENT HOLDINGS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:23-CV-851 |
| BFJ OF USA, LLC, CHOUDRY G. BUTTAR, SHEHZAD QUAMAR, and FAISAL M. YASIN, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

In 2021, the plaintiff, Harris Investment Holdings, LLC, bought property on East Bessemer Avenue in Greensboro. The property adjoined a service station on property owned by the defendant, BFJ of USA, LLC. Soon thereafter, Harris discovered ground contamination on its property, which led Harris to install a vapor intrusion mitigation system. Harris contends that releases from underground storage tanks on BFJ's property caused and are causing the contamination. Because Harris's federal claims are barred by the notice requirement in RCRA and the petroleum exception in CERCLA and it has not offered evidence sufficient to give rise to a dispute of fact as to causation for its state law claims, BFJ's motion for summary judgment will be granted.

I.     **Procedural History**

In October 2023, Harris filed this lawsuit against BFJ and its members Choudry Buttar, Shehzad Quamar, and Faisal Yasin. Doc. 1; *see* Doc. 38 (amended complaint);

Doc. 41 at ¶¶ 11–13.  Discovery has concluded, and the defendants now move for summary judgment.  Doc. 56.  Harris also moves for voluntary dismissal of one of its claims, Doc. 61, and has filed a motion in limine to prevent the defendants from eliciting certain testimony at trial.  Doc. 60.

## II.     Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In evaluating a summary judgment motion, courts "construe all facts and reasonable inferences in the light most favorable to the nonmoving party."  *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

## III.    Facts

Many of the facts are undisputed.  To the extent they are not, the evidence is viewed in the light most favorable to Harris, the non-moving party.  Other facts and opinion testimony will be discussed in connection with specific issues.

### A.  BFJ's Property

In February 2008, BFJ purchased a parcel of land at 2209 East Bessemer Avenue in Greensboro, North Carolina.  Doc. 38-5.  Previous owners operated a gas station on the property for decades before BFJ's purchase.  Doc. 57-8 at 6.

In 1996, the then-owner arranged for the closure of several underground storage tanks on the property containing kerosene, waste oil, and heating oil.  *Id.*; *see* Doc. 62-3

at 61–100 (closure assessment report).  During the closure, consultants found evidence of a petroleum release.  Doc. 62-3 at 73, 75; Doc. 57-8 at 6; Doc. 38-3 at 1.  Ten years later, the North Carolina Department of Environment and Natural Resources (DENR) issued a Notice of No Further Action for this release, concluding that soil and groundwater contamination did not exceed regulatory standards.  Doc. 38-4.

The property also had several underground storage tanks for gasoline and diesel fuel.  Doc. 57-1 at 36; Doc. 57-8 at 6.  In 2007, the then-owner had these tanks closed and removed from the property.  Doc. 57-1 at 52; Doc. 57-8 at 6.  During removal, workers found evidence of a release from the tanks, resulting in an environmental assessment of the property in 2008.  Doc. 57-1 at 33–34, 36; Doc. 57-8 at 7.

As part of the 2008 assessment, consultants collected soil and groundwater samples.  Doc. 57-1 at 41.  They found benzene and other substances at concentrations above the regulatory residential standards in the soil surrounding the former tank locations and at concentrations above the regulatory 2L standards[1] in the groundwater.  *Id.* at 41–42.  The consultants concluded that a petroleum release had occurred, and they excavated the contaminated soil.  *Id.* at 42.

According to Harris's expert, someone collected another groundwater sample from the same location in March 2009 and found a reduction in the concentration of substances from the 2008 sample.  Doc. 57-8 at 12.  The benzene concentration remained higher than the regulatory non-residential standard.  *Id.*

---

[1] The 2L standards are North Carolina's groundwater quality standards.  15A N.C. Admin. Code 2L.0202; *see* Doc. 57-8 at 6.

3

Case 1:23-cv-00851-CCE-JEP    Document 71    Filed 05/08/25    Page 3 of 19

After reviewing the 2008 site assessment report, DENR issued a Notice of No Further Action in May 2009. Doc. 57-5 at 5–6. DENR concluded that "no further action [was] warranted" but noted that the property was only suitable for industrial and commercial use because the contamination exceeded the residential standards. *Id.* at 5. The notice also stated that groundwater was not suitable for use as a water supply. *Id.*

In 2008, BFJ installed new gasoline and diesel underground storage tanks with leak detection technology. Doc. 62-2 at 3; Doc. 57-8 at 6. Len Walker, a consultant hired by BFJ, installed the tanks; he has since inspected them monthly and produced inspection reports for the state. Doc. 57-3 at 5–9; Doc. 62-2 at 6–7, 20, 35, 38; Doc. 62-5. There was a spill of some sort from these tanks in 2012; the record contains minimal information on this release. *See* Doc. 38-6 at 4.

DENR issued notices of violation of state underground storage tank regulations to BFJ in 2012, 2015, 2018, and 2022. *Id.* at 3–6 (2012); Doc. 38-7 (2015); Doc. 38-8 (2018); Doc. 38-9 (2020); Doc. 38-10 (2022).[2] The notices listed numerous violations including failure to maintain and provide records, failure to check the leak detection system, failure to contain and clean up a spill, and failure to report a suspected release. *See* Doc. 57-8 at 9–10.

**B. Harris's Property**

Harris purchased property adjacent to BFJ's property in May 2021. *Id.* at 7; Doc. 38-1. Harris hired Summit Engineering to conduct an environmental assessment. Doc.

---

[2] The issuer of these notices changed between 2015 and 2018 from DENR to the Department of Environmental Quality. For consistency, the Court will refer to this state agency as DENR.

57-8 at 12; Doc. 62-1 at p. 2 ¶ 7. In the February 2022 Phase I assessment, Summit flagged both the Harris property's prior use as an auto repair facility and the gas station on BFJ's property as environmental concerns. Doc. 57-8 at 7–8; Doc. 62-1 at p. 2 ¶ 8; *see id.* at 5–585 (Phase I report).

Summit completed a Phase II assessment in June 2022. Doc. 62-1 at p. 2 ¶ 9; *see id.* at 586–759 (Phase II report). Summit found benzene and other substances in the groundwater on Harris's property at concentrations above regulatory standards. *Id.* at p. 2 ¶ 9; Doc. 62-8 at pp. 2–3 ¶ 8; Doc. 57-8 at 13. Summit performed additional testing in July 2022, again finding benzene in the groundwater above regulatory standards. Doc. 62-1 at p. 3 ¶ 10; Doc. 62-8 at pp. 3, 6–7 ¶¶ 11, 19; Doc. 57-8 at 14.

Upon Summit's recommendation, Harris hired Clean Vapor, LLC to install a vapor intrusion mitigation system to "mitigate the potentially harmful impacts of vapor intrusion" to people in the planned building on the property. Doc. 62-1 at p. 3 ¶¶ 11–14; Doc. 62-8 at p. 7 ¶ 20; Doc. 57-8 at 20, 23; *see also* Doc. 62-1 at 760–69 (Clean Vapor's proposal to Harris). Clean Vapor began installing the system in late 2022 and completed it in July 2023. Doc. 62-1 at p. 3 ¶ 12; Doc. 62-8 at p. 7 ¶ 21.

### IV. RCRA Claims

Harris asserts two claims under the Resource Conservation and Recovery Act (RCRA).[3] Doc. 38 at ¶¶ 54–75. Before filing a RCRA claim in court, a plaintiff must

---

[3] Count 4 is for violations of RCRA under 42 U.S.C. § 6972(a)(1)(A), Doc. 38 at ¶¶ 54–64, and Count 5 is for an "imminent and substantial endangerment" under 42 U.S.C. § 6972(a)(1)(B). *Id.* at ¶¶ 65–75.

first give notice of the alleged violation or endangerment to the Administrator of the Environmental Protection Agency, the state where the violation or endangerment occurs, and the alleged violator or person contributing to the endangerment; the plaintiff must then wait the prescribed time before filing suit. 42 U.S.C. § 6972(b)(1)(A), (b)(2)(A); *see id.* § 6903(1).[4]

Harris did not give notice to the EPA Administrator before filing this lawsuit, as the parties agree. Doc. 57 at 15–16; Doc. 62 at 21–22. The notice and waiting period requirements are "mandatory conditions precedent to commencing suit under the RCRA citizen suit provision." *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989). The RCRA claims will be dismissed.

Harris contends that an exception applies for actions alleging violations of subchapter III and that strict adherence to the notice requirements would "hinder the intent of RCRA." Doc. 62 at 21–22. First, any "statutory intent" does not give district courts authority to ignore a statutory notice requirement. *See Hallstrom*, 493 U.S. at 31.

Second, assuming without deciding that Harris has alleged a subchapter III violation, the exception does not relieve Harris of the notice requirement; it only relieves Harris of waiting the prescribed period after providing notice to sue. *See* 42 U.S.C. § 6972(b)(1)(A) ("[S]uch action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter."); *id.* § 6972(b)(2)(A) (same). Even the cases cited by Harris make clear that

---

[4] Section (a)(1)(A) claims, as in Count 4, require 60 days' notice, and Section (a)(1)(B) claims, as in Count 5, require 90 days' notice. 42 U.S.C. § 6972(b)(1)(A), (b)(2)(A).

6

only the waiting period is excused for subchapter III claims, *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 8–9 (1st Cir. 2009); *Dague v. City of Burlington*, 935 F.2d 1343, 1352–53 (2d Cir. 1991), *rev'd in part on other grounds*, 505 U.S. 557 (1992), and so do numerous other cases. *See, e.g.*, *Courtland Co. v. Union Carbide Corp.*, No. 19-CV-894, 2020 WL 5047131, at *5 (S.D. W. Va. Aug. 26, 2020) ("An exception to the waiting period requirement exists for actions brought under either subsection to allege violations of Subchapter III of RCRA (i.e., management of hazardous waste), which may be brought immediately after the notice to the required parties.").

Harris was required to give notice to the EPA Administrator before bringing its RCRA claims, and Harris concedes it did not do so. The Court will grant summary judgment in favor of the defendants on the RCRA claims, Counts 4 and 5.

## V. CERCLA Claims

Harris initially brought three claims under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Doc. 38 at ¶¶ 29–53. Harris agrees to and moves for dismissal of its contribution claim under 42 U.S.C. § 9613(f)(1) in Count 2. *See* Doc. 61; Doc. 38 at ¶¶ 44–47. This leaves Count 1, in which Harris seeks recovery of response costs under 42 U.S.C. § 9607, Doc. 38 at ¶¶ 29–43, and Count 3, the related claim for a declaratory judgment under 42 U.S.C. § 9613(g). *Id.* at ¶¶ 48–53. These two claims rise and fall together. 42 U.S.C. § 9613(g)(2).[5]

---

[5] Section 9613(g)(2) provides that in a cost recovery action, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

7

The defendants move for summary judgment on the CERCLA claims on several grounds. They contend the claims are barred by the statute of limitations, Doc. 57 at 13–15, and by the "petroleum exception" to CERCLA. *Id.* at 12–13. They also contest the sufficiency of the plaintiff's evidence, particularly on the causation element. *Id.* at 6–12.

### A. Statute of Limitations

A CERCLA action for cost recovery under 42 U.S.C. § 9607, as in Count 1 here, must be brought within six years of initiation of a remedial action. 42 U.S.C. § 9613(g)(2)(B). Harris began installation of a vapor mitigation system in 2022 to prevent vapor intrusion into its building. Doc. 62-1 at p. 3 ¶¶ 11–14; *see id.* at 760–69. The defendant does not dispute that this installation began in 2022. Harris filed this lawsuit in 2023, Doc. 1, well within six years of the installation.

The defendants contend that the CERCLA claims are barred by the statute of limitations because Harris should have known about the 1996 and 2007 releases on BFJ's property when they occurred. Doc. 57 at 14. But the applicable statute of limitations for CERCLA cost recovery claims by its terms does not begin to run until initiation of the remedial action. *See* 42 U.S.C. § 9613(g)(2)(B). It has nothing to do with a plaintiff's knowledge of damage.

The defendants also contend that the CERCLA claims are barred by North Carolina's statute of repose. Doc. 57 at 14–15. But a state's statute of repose does not apply to CERCLA claims. *See* 42 U.S.C. § 9613(g)(2) (stating that there is no time limit on CERCLA cost recovery claims other than the statute of limitations); *Duke Energy Progress, Inc. v. Alcan Aluminum Corp.*, No. 08-CV-460, 2014 WL 4825292, at *3

8

(E.D.N.C. Sept. 25, 2014) (holding that a state statute of repose does not apply to a CERCLA cost recovery claim); *Blackmon v. Holder*, No. 20-CV-524, 2021 WL 2877902, at *5 (E.D.N.C. July 8, 2021) (collecting cases in which courts "declined to apply state statutes of repose to federal claims").

The defendants are not entitled to summary judgment on statute of limitations grounds.

### B. Merits of CERCLA Cost Recovery Claim

A CERCLA cost recovery claim requires a plaintiff to show:

> (1) the defendant is a potentially responsible person ("PRP"); (2) the site constitutes a "facility"; (3) a "release" or a threatened release of hazardous substances exists at the "facility"; (4) the plaintiff has incurred costs responding to the release or threatened release of hazardous substances ("response costs"); and (5) the response costs conform to the National Contingency Plan.

*PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 167–68 (4th Cir. 2013).

First, the defendants contend that there is no evidence of a release since BFJ bought the property in 2008. Doc. 57 at 7. But a current owner is a "potentially responsible person" who is subject to liability even for older releases. 42 U.S.C. § 9607(a)(1); *PCS Nitrogen*, 714 F.3d at 172, 185.[6]

Second, the defendants contend that Harris has not established that a release on BFJ's property caused Harris's response costs. Doc. 57 at 8. Certainly the plaintiff's

---

[6] There is a defense available for "innocent" owners, *see* 42 U.S.C. § 9607(b)(3); *PCS Nitrogen*, 714 F.3d at 185, but the defendants here did not assert this defense. There is also a disagreement between the parties based on very thin factual evidence about a spill in 2012, *see* Doc. 38-6 at 4 (noting a "suspected release from regulated tank(s)"), but the Court need not resolve that issue as other issues are dispositive.

9

evidence of causation is extremely thin. *See* discussion *infra* at 18. But in a CERCLA case, "once [the] plaintiff has proven a prima facie case, the burden of proof falls on the defendant to disprove causation." *Westfarm Assocs. Ltd. P'ship v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 681 (4th Cir. 1995);[7] *accord Courtland Co. v. Union Carbide Corp.*, No. 18-CV-1230, 2023 WL 6331069, at *64 (S.D. W. Va. Sept. 28, 2023).

Harris offers evidence that: (1) substances found on BFJ's property were also found on Harris's property, Doc. 57-8 at 12–14; (2) these substances could have migrated to Harris's property from BFJ's property, *id.* at 22–23; Doc. 62-8 at pp. 5–6 ¶ 18; and (3) Harris's installation of a vapor intrusion mitigation system was in response to the substances on its property. Doc. 62-1 at p. 3 ¶¶ 11–14; Doc. 62-8 at p. 7 ¶ 20; Doc. 57-8 at 20, 23. This creates a disputed question of fact as to whether a release on BFJ's property could have resulted in contamination on Harris's property and the need for the vapor intrusion mitigation system.

Finally, the defendants contend that Harris has not established that its response costs were consistent with the National Contingency Plan because Harris has not offered expert testimony to that effect and Harris did not first notify a regulatory agency about a release. Doc. 57 at 11–12. But the defendants do not point to any law suggesting either of these is required.

---

[7] "The plaintiff must prove only that contaminants which were once in the custody of the defendant could have travelled onto the plaintiff's land, and that subsequent contaminants (chemically similar to the contaminants once existing in defendant's custody) on the plaintiff's land caused the plaintiff to incur cleanup costs. . . . The plaintiff need not produce any evidence that the contaminants did flow onto its land from the defendant's land." *Westfarm*, 66 F.3d at 681.

10

The defendants are not entitled to summary judgment on these grounds.

## C. Petroleum Exception

To prevail on a CERCLA claim for cost recovery, a plaintiff must prove, among other things, that there was "a release or a threatened release of hazardous substances." *PCS Nitrogen*, 714 F.3d at 167 (cleaned up). But there is a statutory exception: if a defendant proves that the released substances were unadulterated petroleum products, then the plaintiff cannot recover. 42 U.S.C. § 9601(14); *Madison Univ. Mall LLC v. Chapel Hill Tire Co.*, No. 14-CV-169, 2014 WL 3696263, at *2 (M.D.N.C. July 23, 2014).

The defendants here have offered evidence that any released substances were unadulterated petroleum products.[8] They point to the Rule 26 report from Harris's expert, Peter de Haven, Doc. 57 at 13 (citing Doc. 57-8), in which he describes several times the substances of concern on both BFJ's property and Harris's property as "petroleum constituents," *e.g.*, Doc. 57-8 at 7–8, 22–23, and notes "[t]wo petroleum releases" on BFJ's property. *Id.* at 10. The defendants also point to the 2008 site assessment, Doc. 57 at 13 (citing Doc. 57-1), in which environmental consultants confirmed a "petroleum release" on BFJ's property. Doc. 57-1 at 42.

In opposition, Harris contends that there is a disputed question of fact because "the constituents of concern may have been adulterated with" chromium, Doc. 62 at 16, "contamination may have emanated from" an underground storage tank containing other

---

[8] The defendants pled the petroleum exception in their answers to the original complaint, Doc. 21 at 12, and the amended complaint. Doc. 41 at 12–13.

11

substances, *id.* at 15, and the petroleum exception is never appropriate for resolution at summary judgment. *Id.* at 17. None of these arguments have merit.

1. **Chromium**

Harris cites three pieces of evidence to support its chromium argument. *Id.* at 16. None creates a disputed question of fact.

First, Harris cites to a paragraph in a declaration by Harris's Chief Financial Officer. *Id.* (citing Doc. 62-1 at p. 2 ¶ 9); *see* Doc. 62-1 at p. 1 ¶ 2. But the witness says nothing about chromium in the cited paragraph. *See* Doc. 62-1 at p. 2 ¶ 9.

Second, Harris relies on the 2022 Phase II assessment report. Doc. 62 at 16 (citing Doc. 62-1 at 586–759). That report is 40 pages long with over 130 pages of appendices. *See* Doc. 62-1 at 586–759. Harris does not direct the Court's attention to where the report mentions chromium, much less where it says that there was a release of chromium-laced products on BFJ's land.[9] Indeed, that assessment only involved testing of Harris's property. *See generally id.* at 586–625.

Finally, Harris relies on Mr. de Haven's February 13, 2025, declaration under oath submitted with Harris's brief in opposition to summary judgment. Doc 62 at 16 (citing

---

[9] The Court has no duty to scour the record for evidence, as the parties know; it is entitled to rely on the parties to direct its attention to evidence through citations in the briefing, as required by the Local Rules and court order. LR 56.1(d); Doc. 15 at ¶ 1; *see also Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) ("[A] court is not required to scour the record in search of evidence to defeat a motion for summary judgment." (cleaned up)); *Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 395–96 (4th Cir. 1994) (holding that the district court was "well within its discretion in refusing to ferret out the facts that counsel had not bothered to excavate"). In otherwise reviewing parts of the report, the Court did notice brief mentions of chromium, Doc. 62-1 at 606–08, but those mentions are only about Harris's property, not BFJ's property.

12

Doc. 62-6 at pp. 6–7 ¶ 12); *see* Doc. 62-6 at 12.  In that declaration, Mr. de Haven testifies that chromium was present on BFJ's property.  Doc. 62-6 at pp. 6–7 ¶ 12.  He does not cite any factual evidence for this statement, mentioning only his earlier, timely expert disclosure.  *Id.* (referring to Doc. 57-8).  It therefore seems clear that this is opinion testimony.

Had Mr. de Haven discussed chromium in his earlier report, there would likely be no problem.  But he did not, at least not as far as the Court can tell.[10]  His opinion about chromium was thus first proffered well after the October 11, 2024, deadline for disclosing expert opinions, *see* Doc. 44, as the defendants point out.  Doc. 65 at 4 (objecting to this testimony as untimely).

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). The nondisclosing party has the burden of establishing that the failure was substantially justified or harmless.  *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021).[11]

---

[10] Neither Mr. de Haven nor Harris has pointed to where in his timely but lengthy expert disclosure he mentioned chromium.  The Court has no obligation to scour the record, *see supra* note 9, but in otherwise reviewing parts of that report, the Court has seen no mention of chromium on BFJ's property.  *See generally* Doc. 57-8.

[11] In exercising their "broad discretion in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless," *Benjamin*, 986 F.3d at 343, district courts consider five factors:  "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."  *Id.* at 342–343.

13

Harris did not respond to the defendants' objection to this evidence,[12] the late disclosure is facially harmful to the defendants, who have had no opportunity to determine the basis for this opinion, and Harris has not proffered anything to show that the failure to timely disclose this opinion was harmless. Mr. de Haven's late expert testimony about chromium, Doc. 62-6 at pp. 6–7 ¶ 12, is not admissible.

In sum, most of the evidence cited by Harris does not support the contention that there was a chromium-laced release on BFJ's property, and the only evidence that arguably does support that contention is inadmissible late-disclosed expert opinion testimony. Harris has not supported its contentions about chromium with admissible evidence.

### 2. Different Source of Contamination

Harris also contends that because the defendants have underground storage tanks that contain kerosene, heating oil, and used oil, "the contamination may have emanated from" those tanks. Doc. 62 at 15. As the defendants point out, Doc. 65 at 3, those tanks were closed nearly 30 years ago. Doc. 57-8 at 6; *see* Doc. 62-3 at 61–100 (closure assessment report). At the time, there was evidence of a petroleum release on the property. Doc. 62-3 at 73, 75; Doc. 57-8 at 6; *see* Doc. 38-3 at 1. But that proves BFG's point that the release was petroleum, and Harris has not pointed to any evidence that the release involved anything other than petroleum. Nor has it pointed to evidence that there has since been a non-petroleum release from those tanks.

---

[12] The Local Rules allow a sur-reply brief when a moving party raises an evidentiary objection in a reply brief. LR 7.6. Harris did not file one.

Harris also points to a document that mentions other types of tanks.  Doc. 62 at 15 (citing Doc. 62-6 at 13).  But that document does not say there are other types of tanks on BFJ's property; it only discusses tanks on properties other than BFJ's.  *See* Doc. 62-6 at pp. 3–4 ¶ 7.  This evidence does not support Harris's contention.

Finally, Harris makes passing reference to other substances including benzene.  Doc. 62 at 10, 17.  There is evidence that benzene was present in the soil and groundwater of BFJ's property in 2008.  Doc. 57-1 at 41–42.  And benzene has been found on Harris's property.  Doc. 62-1 at 609.  But benzene is an "indigenous component[] of crude oil," and such a release is subject to the petroleum exception.  *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 803, 810 (9th Cir. 1989); *accord Munoz v. Intercontinental Terminals Co.*, 85 F.4th 343, 350 (5th Cir. 2023); *S. Fuel Co. v. Amoco Oil Co.*, No. 92-CV-3322, 1994 U.S. Dist. LEXIS 15769, at *12–13 (D. Md. Aug. 23, 1994); *White Plains Hous. Auth. v. Getty Props. Corp.*, No. 13-CV-6282, 2014 WL 7183991, at *8–9 (S.D.N.Y. Dec. 16, 2014).

BFG has offered evidence that any releases were of petroleum.  Harris has not proffered sufficient evidence to allow a jury to conclude that any of the releases were of non-petroleum products from the tanks on BFJ's property.

### 3.  Not Appropriate for Summary Judgment

Harris contends that "application of the petroleum exception is often disputed and must not be adjudicated on summary judgment."  Doc. 62 at 17.  But no party is entitled to avoid summary judgment merely by offering the conclusory assertion that the evidence is disputed.  *See Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir.

15

2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion."). And *Southern Fuel*, the district court case Harris cites for its contention, involved evidence that benzene and other substances were added to or mixed with the petroleum rather than constituents of gasoline inherent in petroleum. 1994 U.S. Dist. LEXIS 15769, at *13–14. There is no such evidence here.

As discussed *supra*, the defendants have offered evidence that the only substances arguably released on BFJ's property were unadulterated petroleum products. This evidence is sufficient to establish the petroleum exception defense, and the burden moves to Harris to come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial. *Bandy*, 59 F.4th at 709–10; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). But Harris has not offered any admissible evidence to the contrary.

The petroleum exception applies, and the CERCLA cost recovery claim is barred. The defendants are entitled to summary judgment on Count 1. And because the declaratory judgment claim in Count 3 rises or falls with Count 1, the defendants are also entitled to summary judgment on Count 3.

### VI. State Law Claims

Harris has brought several state law claims:

-- Count 6 under North Carolina's Oil Pollution and Hazardous Substances Control Act, N.C. Gen. Stat. § 143-215.75 *et seq.*, Doc. 38 at ¶¶ 76–81;

-- Count 7 under 15A N.C. Admin. Code 2N, *id.* at ¶¶ 82–87;

-- Count 8 for nuisance, *id.* at ¶¶ 88–94;

16

-- Count 9 for trespass, *id.* at ¶¶ 95–102;

-- Count 10 for negligence, *id.* at ¶¶ 103–108; and

-- Count 11 for negligence per se. *Id.* at ¶¶ 109–115.

As to Count 7, the defendants contend that there is no private right of action under 15A N.C. Admin. Code 2N. Doc. 57 at 19. Harris does not respond to this argument or defend this cause of action. *See* Doc. 62. Because Harris has abandoned this claim, the Court will grant summary judgment as to Count 7. *See Chamberlain v. Securian Fin. Grp., Inc.*, 180 F. Supp. 3d 381, 405 (W.D.N.C. 2016) (dismissing plaintiff's breach of contract claim because he "abandoned it" by "fail[ing] to respond to Defendants' arguments regarding this claim in its Motion for Summary Judgment" and collecting cases).

The remaining claims will be dismissed because Harris's evidence of causation does not create a disputed question of fact. "Causation is a common element necessary in each of" the remaining state law claims. *James v. Clark*, 118 N.C. App. 178, 185, 454 S.E.2d 826, 831 (1995); *see also Braswell v. Colonial Pipeline Co.*, 395 F. Supp. 3d 641, 652 (M.D.N.C. 2019). In order to survive summary judgment on these claims, Harris must have evidence sufficient to prove that the defendants caused damage to Harris's property, that is, that releases from underground storage tanks on BFJ's property are the source of contamination on Harris's property. *See James*, 118 N.C. App. at 188; *Ammons v. Wysong & Miles Co.*, 110 N.C. App. 739, 745, 431 S.E.2d 524, 528 (1993).

Harris's causation evidence shows only that a release on BFJ's property is a "potential," "possible," or "plausible" source of the contamination on Harris's property.

17

Doc. 57-8 at 15–19, 22–23; Doc. 57-9 at 12. No reasonable jury could find from this evidence that it is more likely than not that the defendants caused damage to Harris's property. *See Wilson v. McLeod Oil Co.*, 327 N.C. 491, 522, 398 S.E.2d 586, 602 (1990) ("[T]he answer, 'that's possible' . . . is a slender reed upon which to base causation.").

To bolster its causation argument, Harris points to Mr. de Haven's February 13, 2025, declaration. Doc. 62 at 14, 24–25 (citing Doc. 62-6). In that declaration, Mr. de Haven testifies that BFJ's property "is the most likely source of the contamination as [he has] stated in [his] reports." Doc. 62-6 at p. 4 ¶ 7. But he does not identify what "reports" he means, much less say where in those reports such a statement is made, and Harris has not filed a sur-reply to assist the Court in locating it.[13] The Court has no obligation to scour the record. *See supra* note 9. This opinion was not disclosed until after the expert testimony deadline and is not admissible. *See* discussion *supra* at 13–14.

Harris has not shown a dispute of fact as to causation, a necessary element for all the state law claims. The Court need not address the parties' other arguments on these claims.[14] The defendants are entitled to summary judgment on Counts 6, 8, 9, 10, and 11.

## VII. Conclusion

Harris's federal claims RCRA are dismissed because Harris did not give notice to the EPA, as the statue requires. The CERCLA claims it puts forth at this stage are barred

---

[13] In otherwise reviewing parts of Mr. de Haven's timely expert report, Doc. 57-8, and timely rebuttal expert report, Doc. 57-9, the Court has not seen such a statement.

[14] The Court has concluded that neither the state statute of limitations nor the state statute of repose bars these claims. But the Court need not go into these questions in detail in view of its resolution of the causation question.

by the petroleum exception, and its state law statutory and tort claims are dismissed for inadequate evidence of causation. The remaining claims for injunctive relief and punitive damages, Counts 12 and 13, are not stand-alone causes of action and will also be dismissed. The defendants' motion for summary judgment will be granted in full.

It is **ORDERED** that:

1. The defendants' motion for summary judgment, Doc. 56, is **GRANTED**.
2. The plaintiff's motion in limine to exclude testimony, Doc. 60, is **DENIED** as moot.
3. The plaintiff's motion for voluntary dismissal of its claims under CERCLA § 113(f)(1), Doc. 61, is **GRANTED**.
4. Judgment will be entered separately.

This the 8th day of May, 2025.

_____
UNITED STATES DISTRICT JUDGE